## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WILLIAN WILFREDO
PACHECO MAYEN,

                Petitioner,                     Case No. 2:25-cv-13056

v.                                        Hon. Brandy R. McMillion
                                                  United States District Judge

KEVIN RAYCRAFT, *et al.*,

                Respondents.

_____/

## OPINION AND ORDER GRANTING
## WRIT OF HABEAS CORPUS (ECF NO. 1)

Petitioner Willian Wilfredo Pacheco Mayen ("Pacheco Mayen" or "Petitioner") has filed a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241, alleging that he is being unlawfully detained at the North Lake Correctional Facility in violation of the Immigration and Nationality Act ("INA"). *See generally* ECF No.1. Pacheco Mayen, a Guatemalan citizen, is the subject of pending immigration proceedings to remove him from the United States. Despite having been in this country for over twenty-two years while raising four children who are all U.S. citizens, the Respondents[1] are holding Pacheco Mayen and refusing to

---

[1] Petitioner files this action against Kevin Raycraft, Acting Field Director of Enforcement and Removal Operation ("ERO"), Detroit Field Office, Immigration and Customs Enforcement ("ICE"); Kristi Noem, Secretary, U.S. Department of Homeland Security; U.S. Department of

provide him with a bond hearing pending his removal proceedings. For the reasons below, this Court finds that Pacheco Mayen's detention without a bond hearing is unlawful, a violation of bond regulations, and a violation of his due process rights, and orders his immediate release, or in the alternative, a bond hearing within seven (7) days. Accordingly, his Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**.

**I.**

Pacheco Mayen is a Guatemalan native and citizen who has resided in the United States since at least 2003. ECF No. 1, PageID.2. He is the father of four children, all of whom are U.S. citizens. *Id.* His nine-year-old son uses a wheelchair and suffers from a combination of developmental delays, neurological dysfunction, and skeletal dysplasia. *Id.* Pacheco Mayen had his first encounter with DHS on July 14, 2011, when ICE agents arrested him in Manchester, New Hampshire, and charged him with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) via Notice to Appear. ECF No. 8-2, PageID.96. Petitioner was processed as a voluntary departure and returned to Guatemala. *Id.* Petitioner's second encounter with DHS occurred on June 17, 2014, when ERO ICE Officers arrested him in Nashua, New Hampshire,

---

Homeland Security ("DHS"); Pamela Bondi, U.S. Attorney General; and the Executive Office for Immigration Review ("EOIR"). In response to this Petition, the Government contends that Petitioner's claim should only be brought against Raycraft, ECF No. 8, PageID.71, and Petitioner does not oppose, ECF No. 9, PageID.105. Thus, the Court will dismiss the Petition against all Respondents except for Raycraft ("Respondent" or the "Government").

and again charged him with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) via Notice to Appear. *Id.* at PageID.97. DHS issued a Notice of Custody Determination one day later, on June 18, 2014, which cited Section 236 of the INA as the authority for Pacheco Mayen's detention. *See* ECF No. 1-3, PageID.26. Then, on July 17, 2014, an Immigration Judge granted bond to Pacheco Mayen pending his removal proceedings. ECF No. 8-2, PageID.97. During a master calendar hearing on that same day, Pacheco Mayen conceded to his removability. *Id.*

On September 8, 2016, an Immigration Judge administratively closed Petitioner's immigration proceedings. *Id.* Later, on June 14, 2018, an Immigration Judge issued an order placing Pacheco's immigration case back on the active docket, and on July 23, 2019, Petitioner applied for cancellation of removal under 8 U.S.C. § 1229b(b)(1). ECF No. 8, PageID.77. An Immigration Judge pretermitted the Petitioner's relief application on February 16, 2021, and ordered his removal to Guatemala. ECF No. 8-2, PageID.98. Pacheco reserved his right to appeal that order and filed an appeal with the Board of Immigration Appeals (BIA) on March 12, 2021. *Id.* The BIA remanded the case back to the Immigration Court in an order issued on June 4, 2024. *Id.*

On July 8, 2025, ICE, in coordination with DOJ, issued a new policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," requiring all noncitizens who entered the United States without inspection to be

subject to mandatory detention without bond.  ECF No. 1, PageID.10.  The policy applies this detention framework to any noncitizen, regardless of when or where they are apprehended.  *Id.*  ICE ERO officers arrested Pacheco on August 26, 2025, near White River Junction, Vermont, and detained him as an applicant for admission under INA § 235.  ECF No. 8-2, PageID.98.  Pacheco Mayen sought and was denied bond on September 11, 2025, after an IJ in Detroit declined having jurisdiction over his case.  ECF No. 1, PageID.15-16.  The IJ issued an Order which included a checked box that simply stated: "Denied, because [t]he Respondent is statutorily ineligible for IJ custody redetermination."[2]  ECF No. 1-2, PageID.22.  Respondent waived any right to appeal the IJ's decision before the Board of Immigration Appeals ("BIA"); however, Pacheco Mayen did not.  *Id.*

On September 29, 2025, Pacheco Mayen filed a petition for habeas corpus before this Court, pursuant to 28 U.S.C. § 2241.  ECF No. 1.[3]  His Petition alleges that Respondent is unlawfully detaining him in violation of the INA; bond regulations under 8 C.F.R. §§ 236.1, 1236.1, and 1003.19; and the Fifth Amendment Due Process Clause.  *See id.* at PageID.16-18.  Pacheco Mayen contends that, as a

---

[2] To the extent that the Government is holding Petitioner under § 1225(b)(2), for all the reasons stated herein, the Court requires application of § 1226(a).

[3] This matter was originally assigned to the Honorable Matthew F. Leitman and reassigned to the undersigned as a companion to *Lopez-Campos v. Raycraft*, Case No. 25-cv-12486-BRM-EAS; *Diaz Sandoval v. Raycraft*, Case No. 25-cv-12987-BRM-EAS; and *Contreras-Cervantes et al v. Raycraft*, 25-cv-13073-BRM-EAS.  The Court previously considered nearly identical factual issues and the same legal issues in *Lopez-Campos*.

noncitizen residing in the United States, and deemed inadmissible for initially entering the country without inspection, 8 U.S.C. § 1226(a) allows for his release on conditional parole or bond pending removal hearings, after a detention hearing to evaluate his risk of flight and dangerousness. *See generally id*.; ECF No. 9. The Respondent asserts that Pacheco Mayen is properly detained under 8 U.S.C. § 1225(b)(2)(A) because he falls in a category of noncitizens that the statute mandates be detained pending removal proceedings. *See generally* ECF No. 8. Pacheco Mayen seeks immediate release from custody or, in the alternative, a bond hearing. ECF No. 1, PageID.19.

Pacheco Mayen's Petition has been fully briefed by the parties. *See* ECF Nos. 8, 9. The Court held a hearing on the Petition on October 14, 2025. *See* E.D. Mich. L.R. 7.1(f)(2). As the Petition is now ripe for decision, the Court will rule on the record before it. *Id.*

## II.

Habeas relief is available when a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Pacheco Mayen seeks habeas relief, arguing that his continued detainment is an unlawful violation of the INA because "[t]he mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply

to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents."  ECF No. 1, PageID.16-17.

Congress established two statutes that principally govern the detention of noncitizens pending removal proceedings.  8 U.S.C. §§ 1225 and 1226.  The first – Section 1225 – is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing."  The use of "the word 'arriving' indicates that the statute governs 'arriving' noncitizens, not those present already."  *See Barrera v. Tindall*, No. 3:25-CV-541-RGJ, 2025 WL 2690565, at \*4 (W.D. Ky. Sept. 19, 2025) (citing *Pizarro Reyes v. Raycraft*, 2025 WL 2609425, at \*5 (E.D. Mich. Sep. 9, 2025)).  And here, the title of the statute is instructive and "especially valuable [where] it reinforces what the text's nouns and verbs independently suggest."  *Barrera*, 2025 WL 2690565 at \*4 (citing *Yates v. United States*, 574 U.S. 528, 552 (Alito, J., concurring in judgment)).

This section is a mandatory detention provision that states, in relevant part:

> **(2)  INSPECTION OF OTHER ALIENS**
> **(A)  In general**
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A).  Key to the issues raised here, Section 1225 applies to "applicants for admission," who are noncitizens "present in the United States who [have] not been admitted or who arrive[] in the United States" 8 U.S.C. § 1225(a)(1). Upon arrival, all applicants for admission must undergo screening by an examining immigration officer, and if it is determined that the applicant for admission "is not clearly and beyond a doubt entitled to be admitted," they "***shall*** be detained for" standard removal proceedings.  8 U.S.C. § 1225(b)(2)(A) (emphasis added).  The only exception to this mandatory detention provision is for noncitizens who are released "for urgent humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A).

The second statutory provision – Section 1226, titled: "Apprehension and detention of aliens" – provides for a discretionary detention framework, and states, in relevant part:

> **(a) ARREST, DETENTION, AND RELEASE**
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
>
> (1)  may continue to detain the arrested alien; and
>
> (2)  may release the alien on—
>
>> (A)  bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General …

8 U.S.C. § 1226(a).  Subsection (c) of Section 1226 prohibits certain noncitizens

who are inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) by virtue of their presence

in the country without being admitted (like Petitioner) from being released on bond,

*but only if* the noncitizen has also been:

> charged with, is arrested for, is convicted of, admits having
> committed, or admits committing acts which constitute the essential
> elements of any burglary, theft, larceny, shoplifting, or assault of a
> law enforcement officer offense, or any crime that results in death
> or serious bodily injury to another person.

8 U.S.C. § 1226(c)(1)(E)[4].  Relevant here, noncitizens arrested and detained under

Section 1226 have a right to request a custody redetermination (i.e., a bond hearing)

before an Immigration Judge, regardless of their criminal history.[5]  *See* 8 C.F.R. §§

1236.1(c)(8), (d)(1).

### III.

### A.    ADMINISTRATIVE EXHAUSTION

Before determining the merits of this Petition, the Court must first address

Respondent's argument that it should require Petitioner to exhaust his administrative

remedies (*e.g.* appeal the IJ's decision to deny him a bond hearing to the BIA), before

---

[4] This section, which subjects certain noncitizens to mandatory detention, was added by Congress in January 2025 with the passing of the Laken Riley Act.  Pub. L. No. 119-1, 139 Stat. 3 (2025).

[5] The Court notes that the parties appear to be in dispute as to whether Pacheco has a criminal history; however, as the Court stated above, even if Petitioner does have a criminal history, that is an issue for consideration by an Immigration Judge during a bond hearing. *See* ECF No. 8, PageID.68, 95-96; ECF No. 9, PageID.120,136.

Pacheco Mayen is permitted to proceed with his habeas Petition. *See* ECF No. 8, PageID.73-74. The Court disagrees that exhaustion is necessary.

"Where Congress specifically mandates, exhaustion is required." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1991). But when it is not mandated, the decision to require exhaustion is within the sound discretion of the court. *Id.; see also Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013). Exhaustion requirements not written into the text of the statute are prudential. *See Perkovic v. I.N.S.*, 33 F.3d 615, 619 (6th Cir. 1994). "Prudential exhaustion is a judge-made doctrine that enables courts to require administrative exhaustion even when the statute or regulations do not." *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 747 (6th Cir. 2019).

In determining when to require prudential exhaustion, courts apply the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (derived from *McGee v. United States*, 402 U.S. 479, 484 (1971); *McKart v. United States*, 395 U.S. 185, 193-95 (1969)), which weighs whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*See Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12 (E.D. Mich. Oct. 29, 2015). Here, all three factors weigh against requiring exhaustion. First, the issues raised in the habeas petition are purely legal in nature

and do not require the agency to develop the record.  Second, because Pacheco Mayen's habeas petition includes a due process claim, the administrative scheme (*i.e.*, appeal to the BIA) is likely futile.  And third, administrative review is not likely to change Respondent's position that Section 1225(b)(2)(A) applies in this context.

While the Court would ordinarily enforce the exhaustion doctrine when it serves the dual purpose of promoting judicial economy and protecting administrative agency authority, waiver is appropriate when the interests of the individual weigh heavily against requiring administrative exhaustion, or exhaustion would be futile and unable to afford the petitioner the relief he seeks.  *See McCarthy*, 503 U.S. at 145; *see also Fazzani v. NE Ohio Corr. Ctr.*, 473 F.3d 229 (6th Cir. 2006) (citing *Aron v. LaManna*, 4 F. App'x 232, 233 (6th Cir. 2001) and *Goar v. Civiletti*, 688 F.2d 27, 28-29 (6th Cir. 1982)); *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981).  Exhaustion is also excused when delay means hardship.  *See Shalala v. Illinois Council*, 529 U.S. 1, 13 (2000).

Exhaustion would be futile because a bond appeal before the BIA would take too long.  *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025) (finding BIA bond appeals on average take six months to complete).  Pacheco Mayen has a Removal Hearing set for March 11, 2027, almost a year and a half from now; however, the parties "anticipate[] that his case will be transferred to the Detroit Immigration Court" as a result of which, Pacheco will receive a new expedited

hearing date. .  ECF No. 8-2, PageID.98-99.  So, its senseless to require him to wait six months for the BIA to reach a decision on whether he is entitled to a bond hearing, when a removal determination would likely come before that decision.

And as further evidence of futility, the Government itself points out, "Pacheco Mayen is unlikely to obtain the relief he seeks through the administrative process based on a recent decision by the Board of Immigration Appeals in *Matter of Yajure Hurtado*, 29 I &N Dec. 216 (BIA 2025), which is binding on the agency and the immigration courts, and which conclusively rejects Pacheco Mayen's arguments in this case."  *See* ECF No. 8, PageID.73-74.[6]  Consequently, any administrative remedy would leave Pacheco Mayen without recourse and, therefore, should be excused.  *See Shawnee Coal*, 661 F.2d at 1093 (recognizing that administrative exhaustion may be excused if it would be futile).  It's unmistakable that waiver is appropriate because depriving Pacheco Mayen of his liberty while awaiting a BIA appeal decision certainly equates to hardship, and any delay results in the very harm Pacheco Mayen is trying to avoid by seeking the bond hearing – detention.  *See*

---

[6] While BIA decisions may be binding upon the agency at large, they are not binding on this Court. *See* 8 C.F.R. § 1003.1(g)(1) ("[D]ecisions of the [BIA] …are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the United States."); *see also Sulivan v. Zebley*, 493 U.S. 521, 530 n.9 (1990) (noting agency rulings are binging on all components of the agency itself but not federal courts); *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024) (discussing interruption of laws is the solemn duty of the Judiciary).

*Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at \*8 n.9 (D. Mass. July 7, 2025).

Aside from waiver, the Sixth Circuit has also previously held that a due process challenge generally does not require exhaustion since the BIA lacks authority to review constitutional challenges. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006); *accord Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) ("exhaustion of administrative remedies may not be required in cases of non-frivolous constitutional challenges to an agency's procedures.") (citation omitted). Since Pacheco Mayen's Petition includes a due process claim, an appeal to the BIA would be pointless. The fact that Pacheco Mayen did not waive his right to appeal the denial of a detention hearing to the BIA does not dissuade the Court from exercising its discretion to decide this habeas petition. *See* ECF No. 1-2, PageID.23.

Furthermore, this Court and many others have waived exhaustion in similar proceedings. *See e.g. Shweika*, 2015 WL 6541689 at \*13; *Lopez-Campos v. Raycraft*, --- F. Supp. 3d ----, No. 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Pizarro Reyes v. Raycraft, et al.*, No. 2:25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Romero v. Hyde, et al.*, ---F.Supp.3d----, No. 1:25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Lopez Benitez v. Francis et al.*, ---F.Supp.3d----, No. 1:25-cv-05937-DEH, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025). As the Court held previously, "[w]hen the liberty of a

12

person is at stake, every day that passes is a critical one, and the Court cannot fault [a detainee] for taking appropriate measures to pursue his claims through the habeas process, with the expectation that his claims would be met with a sense of urgency, and he would receive a decision in a more expedient manner." *See Lopez-Campos*, 2025 WL 2496379 at *5.  The same holds true for Pacheco Mayen.

Hence, because exhaustion would be futile and unable to provide Pacheco Mayen with the relief he requests in a timely manner, the Court waives administrative exhaustion and will address the merits of the habeas petition.

## B.   STATUTORY INTERPRETATION

The Court then turns to the central question in this case, as it and so many other courts have had to do in recent months: which detention framework properly applies to a Guatemalan citizen who has lived in the United States since 2003, was never lawfully admitted to the country, and has now been arrested and is facing reinstated removal proceedings?  Pacheco Mayen says Section 1226(a), and the Government says Section 1225(b)(2)(A).  This Court has previously ruled that Section 1226(a) applies and finds the facts of this case warrant the same result.  *See Lopez Campos*, 2025 WL 2496379.

For the past 30 years, the Government has applied Section 1226(a) in seeking detention in this context, and even did so for this very Petitioner in 2014 when it instituted removal proceedings and released him on bond.  *See* ECF No. 8-2,

PageID.125.  But now that the Government's immigration policy has changed, and Section 1225(b)(2)(A) is more favorable, it wants the Court to declare that the historical application of Section 1226(a) is incorrect.  The Court remains unwilling to do so.  Respondent simply can't have it both ways.  The plain language of the statutes, the overall structure, the intent of Congress, and over 30 years of agency action make clear that Section 1226(a) is the appropriate statutory framework for determining bond for noncitizens who are already in the country and facing removal.

In harmonizing Sections 1225 and 1226 of the INA, the Court must interpret the meaning of the statutes that apply at the time of inspection by immigration officials and at the time of apprehension.  "A statute should be construed so that effect is given to all its provisions[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009); *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (discussing how courts "must give effect to the clear meaning of statutes as written.").  Each word within the statute must be given "'it's ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'"  *Kentucky,* 23 F.4th at 603 (citing *Walters v. Metro Edu. Enters., Inc.*, 519 U.S. 202, 207 (1997); *Graham Cnty. Soil & Water Conservation Dist. et al. v. United States ex rel. Wilson*, 545 U.S. 409, 415 (2005)).  "The words of a statute must be read in their context and with a view to their place in the overall statutory scheme."  *Roberts v. Sea-land Servs., Inc.*, 566 U.S. 93, 101 (2012).  Courts must also "use every tool at their

disposal to determine the best reading of the statute." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).   In doing so here, the Court must determine whether Pacheco Mayen is lawfully detained under Section 1225(b)(2)(A), as Respondent claims.   And the Court finds he is not.

Beginning with the language of the statute itself.   The plain text of Section 1225(b)(2)(A) and Section 1226(a) do not support Respondent's contention that "§ 1225(b)(2) requires mandatory detention for noncitizens who fall within its terms until the conclusion of their administrative proceedings and detaining a noncitizen under § 1226(a), which allows release on bond, would nullify the mandatory detention required by § 1225(b)(2)."   ECF No. 8, PageID.84.   Section 1225(b) applies to "Inspection for applicants for admission," and subsection (1) governs "Inspection of aliens ***arriving in*** the United States and certain other aliens who have not been admitted or paroled." *Id.* (emphasis added).   Section 1226, on the other hand, applies to the "[a]pprehension and detention of aliens."

While not binding, statutory headings/titles are instructive and provide the Court with the necessary assurance that it is at least applying the right part of the statute in a given circumstance. *See Merit Mang. Grp, LP v. FIT Consulting, Inc.*, 583 U.S. 366, 380 (2018); *Dubin v. United States*, 599 U.S. 110, 120-21 (2023) ("This Court has long considered that the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute.").

Here, it is as simple as looking to which statute makes the most sense – was Pacheco Mayen arriving and being inspected, or was he apprehended and detained?  The facts could not make it any more clear that the latter is true here.

Looking to Section 1225(b)(2)(A), when dealing with "inspection and removal of arriving aliens," immigration officials "shall" detain "an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted."  8 U.S.C. § 1225(b)(2)(A).  Respondent argues that the term "applicant for admission" is defined as any "unadmitted noncitizens present in the United States," and therefore applies to anyone here unlawfully, even if they are already physically present—regardless of the length of time they have been present.  *See* ECF No. 8, PageID.75 (citing 8 U.S.C. § 1225(a)(1), *Dep't of Homeland Sec. v. Thursiddigiam*, 591 U.S. 103, 139 (2020)).  They similarly argue that the inquiry into whether Pacheco was "seeking admission" is functionally equivalent to an inquiry into whether he was seeking a "lawful entry."  ECF No. 8, PageID.76.  Thus, "[a] noncitizen's previous unlawful physical entry has no bearing on this analysis."  *Id.*  So, under Respondent's interpretation, Section 1225(b)(2)(A) requires detention of any noncitizen "present" in the country who has not been lawfully admitted.  The Court finds this much too broad.

Moreover, 1225(b)(2)(A) applies during inspection, which usually occurs at the border upon seeking lawful entry into this country.  Much like the petitioner in *Lopez-Campos*, Pacheco Mayen was arrested by ICE within the United States, over 22 years after arriving.  *See Lopez-Campos*, 2025 WL 2496379 at *7.  There is no logical interpretation that would find that Pacheco Mayen was actively "seeking admission" after having resided here, albeit unlawfully, for almost a quarter of a century.

In contrast, looking to the plain language of Section 1226, when dealing with "apprehension and detention of aliens," upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States."  8 U.S.C. § 1226(a).  This provision is clearly applicable, as Pacheco Mayen encountered ICE ERO Officers, who then arrested and detained him.  He is pending removal proceedings in the Immigration Court; therefore, the Attorney General "may continue to detain" or "may release on bond."  *Id.*  While this language is discretionary, the statute provides that the noncitizen has the right to request a custody redetermination (*i.e.*, bond hearing) before an IJ, which is precisely what Pacheco Mayen has done.  *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

Notably, Respondent previously released Pacheco Mayen on bond pursuant to Section 1226(a).  The Government does not cite to anything to support its new

interpretation, and the Court is not persuaded that Petitioner's nearly 10-year-pending application is enough to constitute "seeking admission." To hold otherwise would allow the Government to reopen any previous case that it chose to administratively close (as low priority) and now take a conflicting position. The Court is not willing to open those floodgates.

The Supreme Court has looked at these statutes and clarified that they apply in different circumstances. *See Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018). Section 1225 is "framed [] as a part of the process that 'generally begins at the Nation's borders and ports of entry, where the Government must determine whether [noncitizens] seeking to enter the country are admissible.'" *Rosado v. Figueroa, et al.*, No. 2:25-cv-02157-DLR-CDB, 2025 WL 2337099, at *8 (citing *Jennings*, 583 U.S. at 287). Whereas Section 1226(a) applies to the process of "arresting and detaining" noncitizens who are already living "inside the United States" but still subject to removal. *Jennings*, 538 at 288. Put simply, Section 1225 applies to noncitizens "arriving to the country" and Section 1226 governs detention of noncitizens "already in the country." *Id.*

Looking to the facts of this case, it is undisputed that Pacheco Mayen, by definition, is a noncitizen "present in the United States who has not been admitted or paroled." 8 U.S.C. § 1182(a)(6)(A). Respondent concedes that they do not know when Pacheco Mayen arrived in the U.S. *See* ECF No. 8-2, PageID.95. But Pacheco

Mayen states that he has resided here for more than twenty-two years. ECF No. 1, PageID.2; *Id.* Prior to his arrest, he lived in Vermont with his wife and children. ECF No. 1. at PageID.15. Under these circumstances, it cannot be said that Section 1225(b)(2)(A) applies to him. Pacheco Mayen was not "arriving to the country." Quite the contrary, he was arrested while present and "already in the country," having lived here for decades, making Section 1226 applicable. *See Jennings*, 538 at 288; *see also Lopez-Campos*, 2025 WL 2496379 at *8.

The record further supports this interpretation. On June 17, 2014, when Pacheco Mayen was arrested a second time for being in the country unlawfully, he was provided with a Form I-862 (Notice to Appear) and a Form I-286 (Notice of Custody Determination). ECF No. 1-3, PageID.25; ECF No. 8-2, PageID.96. Respondent initiated immigration proceedings against him by filing the Notice to Appear. ECF No. 8-2, PageID.96. The Warrant and Notice of Custody Determination cited INA § 236 (codified at 8 U.S.C. § 1226) as the authority for Pacheco Mayen's detention. *See* ECF No. 1-3, PageID.25-26. And that was over 11 years ago, which further supports the Court's conclusion that Section 1226(a), as opposed to 1225(b)(2)(A), is applicable to this case. If Pacheco Mayen was "present" and not "arriving" 11 years ago, he most certainly should be deemed "present" now.

Eleven years after having initially released Pacheco Mayen on bond and following his most recent arrest on August 26, 2025, Respondent now claims Pacheco's detention falls under Section 1225(b)(2)(A).  ECF No. 5-2, PageID.79. The Court cannot credit this new position that was adopted post-hac, despite a clear indication that Pacheco Mayen was not detained under this provision when he was first apprehended, arrested, and bonded in 2014.[7]  *Cf. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 22, 24 (2020) (holding that, under arbitrary and capricious review in the administrative law context, "[t]he basic rule is clear: [a]n agency must defend its actions based on the reasons it gave when it acted," not on "impermissible post hoc rationalizations").[8]  And nearly every, if not all, courts addressing this very issue have held the same.[9]

---

[7] What's more, "[o]n July 17, 2014, an Immigration Judge in Boston, Massachusetts granted Pacheco a $10,000 bond . . . [o]n July 18, 2014, Pacheco was released on bond."  ECF No. 8-2, PageID.97.  But for the Government's new policy, Petitioner would have been entitled to the same bond hearing he received then, today.  Unfortunately for the Government, DHS's priority changes do not in turn dictate changes in statutory interpretation.

[8] *See Lopez Benitez v. Francis et al.*, ---F.Supp.3d----, No. 1:25-cv-05937-DEH, 2025 WL 2371588, at *5 (S.D.N.Y. Aug. 13, 2025).

[9] *See e.g. Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *8 n.9 (D. Mass. July 7, 2025) ("DHS cannot convert the statutory authority governing . . . detention from [Section 1225(b)] to [Section 1226(a)] through the post-hoc issuance of a warrant." (citing *Matter of Q. Li*, 29 I. & N. Dec. 66, 69 n.4 (BIA 2025)); *Martinez v. Hyde*, ---F. Supp. 3d ---, 1:25-cv-11613-BEM, 2025 WL 208438 (D. Mass. July 24, 2025) ("[S]ection 1125(b)(2) cannot be read to mandate detention of non-citizens already present within the United States, based on certain inadmissibility grounds, as that would nullify a recent amendment to the immigration statues."); *Lopez Benitez*, 2025 WL 2371588 at *5 ("The Court cannot credit Respondents' new position as to the basis for Mr. Lopez Benitez's detention, which was adopted post hoc and raised for the first time in this litigation.").

Further, if Congress had intended for Section 1225 to govern all noncitizens present in the country, who had not been admitted, then it would not have recently adopted an amendment to Section 1226 that prescribes a subset of noncitizens be exempt from the discretionary bond framework.  The Laken Riley Act added a subsection to Section 1226 that specifically mandated detention for noncitizens who are inadmissible under Sections 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Pacheco Mayen), 1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) ***and*** have been arrested for, charged with, or convicted of certain crimes.  *See* 8 U.S.C. § 1226(c)(1)(E).  Respondent's interpretation of the statutes would render this recently amended section superfluous.  As another court recently held,

> [W]hile Section 1226(a) expressly carves out certain "criminal" noncitizens from its discretionary framework, it does not similarly carve out noncitizens who would be subject to mandatory detention under Section 1225(b)(2).  *See* 8 U.S.C. § 1226(a) ("*Except as provided in subsection (c)* ..., the Attorney General ... *may*" (emphases added)).  "That express exception" to Section 1226(a)'s discretionary framework "implies that there are no *other* circumstances under which" detention is mandated for noncitizens, like [Pacheco Mayen], who are subject to Section 1226(a).  *Jennings*, 583 U.S. at 300 (citing A. SCALIA & B. GARNER, READING LAW 107 (2012)); *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010) ("that Congress has created specific exceptions" to the applicability of a statute or rule "proves" that the statute or rule generally applies absent those exceptions).

*dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025).  "If § 1225(b)(2) already mandated detention of any alien who has not been

admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless" and this Court, too, "will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2)." *Maldonado v. Olsen*, ---F. Supp.3d----, No. 0:25-cv-03142, 2025 WL 237441, *12 (D. Minn. Aug. 15, 2025).

There can be no genuine dispute that Section 1226(a), and not Section 1225(b)(2)(A), applies to a noncitizen who has resided in this country for over twenty-two years and was already within the United States when he recently encountered and was apprehended and arrested by ICE ERO.  The reading of the statutes supports this finding, as does every other Court that has had to address the distinction between Section 1225(b)(2)(A) and Section 1226(a).[10]  Therefore, the

---

[10] *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025); *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Martinez v. Hyde*, ---F. Supp. 3d ---, 1:25-cv-11613-BEM, 2025 WL 2084238 (D. Mass. July 24, 2025); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. July 28, 2025); *Rosado v. Figueroa et al.*, No. 2:25-cv-02157-DLR, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis et al.*, ---F.Supp.3d----, No. 1:25-cv-05937-DEH, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Gonzalez et al. v. Noem et al.*, No. 5:25-cv-02054-ODW-BFM (C.D. Cal. Aug. 13, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Garcia Jimenez v. Kramer*, No. 4:25-cv-03162-JFB-RCC, 2025 WL 2374223 (D. Neb. Aug. 14, 2025); *Maldonado v. Olson*, ---F.Supp.3d ----, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Romero v. Hyde, et al.*, ---F.Supp.3d----, No. 1:25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Benitez et al. v. Noem et al.*, No. 5:25-cv-02190-RGK-AS (C.D. Cal. Aug. 26, 2025); *Kostak v. Trump et al.*, No. 3:25-cv-01093-JE-KDM (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, --- F.Supp.3d ----, No. 0:25-cv-03051, 2025 WL 2466670 (D. Minn. Aug. 27, 2025); *Diaz Diaz v. Mattivelo*, No. 25-cv-12226, 2025 WL 2457610 (D. Mass. Aug. 27, 2025); *Doe v. Moniz*, --- F.Supp.3d ----, No. 1:25-cv-12094-IT, 2025 WL 2576819 (D. Mass. Sept. 5, 2025); *Pizarro Reyes v. Raycraft, et al.*, No. 2:25-cv-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Salcedo Aceros v. Polly Kaiser et al.*, No. 25-cv-5624, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Lamidi v. FCI Berlin, Warden*, No. 1:25-cv-00297-LM-TSM (D.N.H. Sept. 15, 2025);

Court finds that Pacheco Mayen is not subject to the provisions of Section 1225(b)(2)(A).  Rather, he clearly falls under the provision of Section 1226(a) and is subject to the discretionary bond determination outlined therein.[11]

## C.   DUE PROCESS

Finally, Pacheco Mayen argues that his continued detention is a violation of due process – and the Court agrees.

The Fifth Amendment guarantees the right to be free from deprivation of life, liberty, or property without due process of law.  U.S. CONST. amend. V.  Liberty is one of the most basic and fundamental rights afforded and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical

---

*Garcia Cortes, v. Noem et al.*, No. 25-cv-02677, 2025 WL 2652880 (D. Colo. Sept. 16, 2025); *Maldonado Vazquez v. Feeley et al.*, No. 25-cv-01542, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); *Velasquez Salazar v. Dedos et al.*, No. 25-cv-00835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *Hasan v. Crawford*, ---F.Supp.3d ----, No. 25-cv-1408, 2025 WL 2682255 (E.D. Va. Sept. 19, 2025); *Yumbillo v. Stamper*, No. 25-cv-00479, 2025 WL 2688160 (D. Me. Sept. 19, 2025); *Barrera v. Tindall*, No. 25-cv-541, 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL2690565 (W.D. Ky. Sept. 19, 2025); *Choglo Chafla v. Scott et al.*, No. 2:25-cv-00437-SDN, 2025 WL 2688541 (D. Me. Sept. 22, 2025); *Lepe v. Andrews*, --- F. Supp. 3d ----, No. 1:25-cv-01163-KES-SKO, 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); *Giron Reyes v. Lyons*, ---F. Supp. 3d ----, No. 25-CV-4048, 2025 WL 2712427 (N.D. Iowa Sept. 23, 2025); *Barrajas v. Noem et al.*, No. 25-cv-00322, 2025 WL 2717650 (S.D. Iowa Sept. 23, 2025); *Valencia Zapata v. Kaiser*, ---F. Supp. 3d ----, No. 25-cv-07492, 2025 WL 2741654 (N.D. Cal. Sept. 26, 2025); *Quispe v. Crawford, et al.*, No. 1:25-cv-1471-AJT-LRV, 2025 WL2783799 (E.D. Va. Sept. 29, 2025); *Belsai D.S. v. Bondi, et al.*, No. 25-cv-3682, 2025 WL 2802947 (D. Minn. Oct. 1, 2025); *Echevarria v. Bondi, et al.*, No. cv-25-03252-PHX-DWL, 2025 WL 2821282 (D. Ariz. Oct. 3, 2025); *Guerrero Orellana v. Moniz*, ---F. Supp. 3d ----, No. 25-cv-12664-PBS, 2025 WL 2809996 (D. Mass. Oct. 3, 2025); *Hyppolite v. Noem, et al.*, No. 25-cv-4304, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025).

[11] The Court notes that Pacheco Mayen's petition asserts that the government is in violation of regulations that would require a bond in his case.  ECF No. 1, PageID.17.  The Government argues that those regulations do not apply because the petitioner is being held under 1225(b)(2) (ECF No. 8, PageID.91); however, as the Court has discussed, 1225(b)(2) is inapplicable in this case as 1226 is the proper statute, and those regulations apply under 1226.

restraint—lies at the heart of the very liberty that [the Due Process Clause] protects."

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).  The Due Process Clause extends to

all "persons" regardless of status, including noncitizens (whether here lawfully,

unlawfully, temporarily, or permanently).  *Id.* at 693; *see also Reno v. Flores*, 507

U.S. 292, 306 (1993); *Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 246837,

at *4 (6th Cir. Jan. 18, 2023).

Respondent does not dispute that Pacheco Mayen is entitled to due process;

rather, the Government argues that it afforded the process due under Section

1225(b)(2)(A) because Pacheco Mayen

> [W]as given notice of the charges against him, he has access to counsel,
> he has attended a hearing with an immigration judge, he has requested
> bond, he has the right to appeal the denial of his request for bond, he
> has been detained by ICE for eleven weeks, and he is scheduled for
> another hearing in immigration court in less than three months.

*See* ECF No. 8, PageID.71-73.  The Supreme Court has held that "due process under

the constitution is coextensive with the removal procedures provided by Congress."

*Id*. at PageID.71-72 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103,

138–140 (2020)).  However, having found that Section 1226(a) governs Pacheco

Mayen's detention, the Government's assessment fails, and the process due to a non-

citizen that is apprehended and detained is that which Section 1226(a) affords – a

bond hearing.  Here, the IJ did not conduct a bond hearing.

In evaluating due process in the context of civil confinement, the Court looks

to (1) the private interest that will be affected by official action; (2) the risk of

erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail. *Mathews v. Eldrige*, 424 U.S. 319 (1976); *see also United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020).  All three factors weigh in favor of affording Pacheco Mayen a detention hearing.  First, his liberty is at stake.  Second, the risk of erroneously depriving him of his freedom is high if the IJ fails to assess his risk of flight and dangerousness.  And third, on the record currently before the Court, given the history and characteristics of this Petitioner, the Government has not and likely cannot show that it has a significant interest in Pacheco Mayen's continued detention.

Accordingly, the Court agrees that detention of Pacheco Mayen under the mandatory detention framework is a violation of his due process rights.

## IV.

As this Court has previously stated:

Section 1226(a) of the INA recognizes that the core and "most elemental of liberty interests" is to be free from restraint and physical detention.  *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004).  For centuries, the Government has acted in accordance with these principles.  The recent shift to use the mandatory detention framework under Section 1225(b)(2)(A) is not only wrong but also fundamentally unfair.  In a nation of laws vetted and implemented by Congress, we don't get to arbitrarily choose which laws we feel like following when they best suit our interests.

*Lopez-Campos*, 2025 WL 2496379 at *10.  The plain language of both Sections 1226(a) and 1225(b)(2)(A) mandates a finding that Pacheco Mayen is entitled to a detention hearing pending his removal proceedings.  Because the Immigration Court is in the best position to evaluate Petitioner's risk of non-appearance and dangerousness, this Court leaves to its sound discretion a determination on that issue.

Accordingly, the Court **DISMISSES** the Petition against Respondents Kristi Noem, Pamela Bondi, DHS, and EOIR.  Pacheco Mayen's Petition for Writ of Habeas Corpus (ECF No. 1) is **GRANTED**.  Respondent is **HEREBY ORDERED** to immediately release Pacheco Mayen, or in the alternative, provide him with a bond hearing under 8 U.S.C. § 1226(a) within seven (7) days of the date of this Order.

**IT IS FURTHER ORDERED** that Respondent is **ENJOINED** from pursuing detention on the basis of 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Respondent shall file a Status Report with this Court on or before October 27, 2025, to certify compliance with this Order.  The Status Report shall include if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**IT IS SO ORDERED.**

Dated:  October 17, 2025                    s/Brandy R. McMillion
      Detroit, Michigan                  HON. BRANDY R. MCMILLION
                                   United States District Judge